COX FRICKE LLP
A LIMITED LIABILITY LAW PARTNERSHIP

JOACHIM P. COX            7520-0
    jcox@cfhawaii.com
RANDALL C. WHATTOFF       9487-0
    rwhattoff@cfhawaii.com
KAMALA S. HAAKE           9515-0
    khaake@cfhawaii.com
800 Bethel Street, Suite 600
Honolulu, Hawai'i  96813
Telephone:  (808) 585-9440
Facsimile:   (808) 275-3276

Attorneys for Defendants
OHANA MILITARY COMMUNITIES, LLC and
HUNT MH PROPERTY MANAGEMENT, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| CLEOPHAS C. POWELL, on behalf of himself and all similarly situated,<br><br>           Plaintiffs,<br><br>   vs.<br><br>OHANA MILITARY COMMUNITIES, LLC; HUNT MH PROPERTY MANAGEMENT, LLC; and DOE DEFENDANTS 1-10,<br><br>          Defendants. | CIVIL NO. _____<br><br>DEFENDANTS OHANA MILITARY COMMUNITIES, LLC AND HUNT MH PROPERTY MANAGEMENT, LLC'S NOTICE OF REMOVAL; DECLARATION OF RANDALL C. WHATTOFF; EXHIBIT 1; DECLARATION OF SHARYN PROCACCIO; DECLARATION OF JOSEPH RASH; CERTIFICATE OF SERVICE<br><br><br>No Trial Date Set |

## DEFENDANT OHANA MILITARY COMMUNITIES, LLC AND HUNT MH PROPERTY MANAGEMENT, LLC 'S NOTICE OF REMOVAL

Defendants Ohana Military Communities, LLC ("Ohana") and Hunt MH Property Management, LLC ("Hunt") (collectively, "Defendants") hereby remove to this Honorable Court a civil lawsuit filed in the First Circuit Court for the State of Hawai'i, Case No. 1CCV-23-0001504, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

## I.     STATE COURT PROCEEDINGS

1.     On November 20, 2023, Plaintiff Cleophas C. Powell, on behalf of himself and all similarly situated ("Plaintiff"), filed a putative Class Action Complaint ("Complaint") against Ohana in the First Circuit Court for the State of Hawai'i.  The Complaint alleges the following causes of action:  (1) Breach of Contract; (2) Breach of Implied Warranty of Habitability; (3) Violation of Hawai'i Revised Statute Chapter 521 – Landlord Tenant Code; (4) Unfair and Deceptive Trade Practices ("UDAP")/Unfair Methods of Competition ("UMOC"); (5) Nuisance; and (6) Wrongful Eviction.

2.     On November 21, 2023, Plaintiff filed a First Amended Complaint ("FAC") against Ohana and Hunt that alleges that following causes of action:  (1) Breach of Contract (all Defendants); (2) Breach of Implied Warranty of Habitability (all Defendants); (3) Violation of Hawai'i Revised Statute Chapter 521 – Landlord Tenant Code (Ohana); (4) UDAP/UMOC (all

Defendants); (5) Nuisance (all Defendants); and (6) Wrongful Eviction (all Defendants).

3.     Defendants were served with the FAC on April 3, 2024.  With the FAC, Plaintiff also included a Summons.  True and correct copies of the pleadings filed in state court, including the Complaint, FAC, and Summons are attached hereto as Exhibit 1.

4.     Plaintiff served the Complaint on Ohana and Hunt by serving Capitol Corporate Services, Inc., the registered agent for service of process, on April 3, 2024.  Therefore, this Notice of Removal is timely filed pursuant to 28 U.S.C. §§ 1446(b) and 1453(b).

## II.     VENUE

5.     Venue lies in the United States District Court for the District of Hawaiʻi pursuant to 28 U.S.C. §§ 1441(a) and 1446(a).  This action was originally brought in the Circuit Court of the First Circuit, State of Hawaiʻi.

## III.     GROUNDS FOR REMOVAL

### A.     Summary of Grounds for Removal

6.     "[A] defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal containing 'a short and plain statement of the grounds for removal.'  . . .  Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the 'pleading'

requirements for removal' and to clarify that courts should 'apply the same liberal rules to removal allegations that are applied to other matters of pleading." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (citations omitted).

7.     This case squarely meets the requirements for removal under the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. §§ 1332(d) and 1453, because the amount in controversy exceeds the sum or value of $5 million exclusive of interest and costs, a member of the class of plaintiffs is a citizen of a state different from a defendant, and the number of all proposed class members is more than 100.  Moreover, because less than one-third of the putative class members are citizens of the state where the action was filed, removal is non-discretionary.  As the Supreme Court has noted: "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co.*, 574 U.S. at 90.

**B.     Removal Under the Class Action Fairness Act**

8.     Pursuant to 28 U.S.C. §§ 1332(d)(2), 1332(d)(2)(A) and 1332(d)(5)(B), original jurisdiction extends to class actions, such as the present one, in which (1) the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs; (2) any member of the class of plaintiffs is a citizen

of a state different from any defendant; and (3) the number of all proposed plaintiff class members in the aggregate is more than one hundred.

9.    Moreover, where less than one-third of the putative class members are citizens of the forum state, removal is mandatory.  *See* 15 Daniel R. Coquillette, et al., Moore's Federal Practice - Civil § 102.26 (Online ed.) ("[W]hen one-third or fewer of the class members are citizens of the original forum state, federal courts <u>must exercise jurisdiction</u> over the class action.  CAFA <u>does not permit</u> federal courts to decline to exercise jurisdiction in this situation.") (emphasis added, citation omitted).

10.   Here, as discussed at length below, removal is mandatory because the case meets the jurisdictional pre-requisites and because less than one-third of the putative class members are citizens of Hawaiʻi.  Moreover, even if Plaintiff could somehow show that more than one-third of the putative class members are citizens of Hawaiʻi, the interests of justice do not support remand given the unique status of the putative class of military service members and their families.

**C.    The Amount in Controversy Exceeds $5 Million**

11.   CAFA requires a $5 million jurisdictional minimum for class action removal.  28 U.S.C. § 1332(d)(2).  The claims of the individual class members are aggregated to determine whether the matter in controversy exceeds

this amount.  28 U.S.C. § 1332(d)(6).  Interest and costs are excluded, *id*., but courts do include punitive damages and attorneys' fees, *Richmond v. Allstate Ins. Co*., 897 F. Supp. 447, 449–50 (S.D. Cal. 1995).

12. The Supreme Court has made clear that, with respect to the amount-in-controversy requirement, a defendant need merely have a good faith basis to allege that the amount exceeds $5 million.  "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court. . . . [It would be] anomalous to treat commencing plaintiffs and removing defendants differently with regard to the amount in controversy."  *Dart Cherokee Basin Operating Co.*, 574 U.S. at 87–88.

13. "Defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, <u>defendants may simply allege or assert that the jurisdictional threshold has been met</u>."  *Id.* at 88–89 (emphasis added).

14. Here, the amount placed in controversy by the FAC exceeds the jurisdictional minimum of $5 million.  Plaintiff alleges in the FAC that "it has been necessary for Plaintiffs to incur expenses and other special damages in an amount to be proven at trial."  FAC ¶ 33.  Plaintiffs seek the following damages, among others:  "overpayment of rent", *id.* ¶ 34, "all consequential damages," *id.* ¶ 35,

"payment of rent" for allegedly being forcibly evicted, *id.* ¶ 50 and "disgorgement of profits", *id.*, Prayer for Relief.

15.    Plaintiff seeks treble damages under Hawaiʻi Revised Statutes Chapter 480 and punitive damages for Defendants' alleged conduct.  *Id.*

16.    Plaintiff seeks an award of attorneys' fees and costs.  *Id.*

17.    The class allegedly consists of "<u>well over 100</u>" residents, apparently spread across all of Defendants' neighborhoods in the Pearl Harbor area.  *Id.* ¶ 1 (emphasis added) (alleging that "Plaintiffs are tenants who leased residential housing within the City and County of Honolulu from Defendant OHANA MILITARY COMMUNITIES, LLC and have been forcibly evicted from their homes down to contaminated potable water caused by fuel leaks associated with the Red Hill Bulk Fuel Storage Facility . . . .").  Plaintiff contends that "Defendants entered into thousands of leases with tenants for residential housing including the provision of potable water."  *Id.* ¶ 12.

18.    Defendants own and lease 4,273 housing units in the areas around Pearl Harbor.  *See* Rash Decl. ¶ 16.  The average rent in these homes is $3,961.  *See id.*  If the class is seeking the return of just one month rent as damages for the alleged wrongful eviction, that alone would exceed the jurisdictional limit under CAFA.

19.     Accordingly, the broad scope of damages asserted in the Complaint, as well as Plaintiff's claim for attorneys' fees, multiplied by each potential member of the proposed class, exceeds the jurisdictional minimum of $5 million set forth in 28 U.S.C. § 1332(d)(2).

**D.     <u>Minimal Diversity</u>**

20.     The minimal diversity requirement of 28 U.S.C. § 1332(d)(2) merely requires that any member of the plaintiff class be a citizen of a different state than <u>any</u> defendant.

21.     Defendant Hunt is a citizen of Texas and Delaware.

a.     Hunt is a property management company that provides property management services to military housing communities throughout the United States.  These services include functions such as receiving rents, executing leases, assisting with leasing, and other actions typically associated with residential property management.  Procaccio Decl. ¶ 11.

b.     Hunt provides property management services for approximately 52,000 units spread across more than 40 military installations on behalf of the Navy, Air Force, and Marine Corps.  This includes communities in Alabama, Arkansas, California, Colorado, Delaware, Florida, Georgia, Illinois, Indiana, Louisiana, Massachusetts, Mississippi, New Mexico, Nevada, Oklahoma,

South Carolina, South Dakota, Texas, Tennessee, Virginia, Washington State, and Washington D.C. *Id.* ¶ 12.

        c.     There is no single state where Hunt MH Property Management, LLC provides a majority of its property management services. *Id.* ¶ 13.

        d.     The company headquarters for Hunt is in El Paso, Texas. This is the site where day-to-day control over the company is exercised, where strategy is set, and where company-wide decisions are made. The offices of the company's highest-ranking executives are located in El Paso, and as a result, this is the location where major policy, advertising, finance, and similar decisions originate. This is also the location where LLC records are maintained. The principal place of business and the management headquarters for the companies that have an ownership interest in Hunt are also located in El Paso. *Id.* ¶ 14.

        e.     Hunt is organized under the laws of Delaware.

        f.     All of Hunt's members, and all other entities in Hunt's membership/ownership chain, are also citizens of Texas and/or Delaware. *See id.* ¶¶ 15–16; *see also id.* ¶¶ 7–10. All such entities have their principal place of business in Texas and are organized under the laws of Delaware. *See id.*

        22.    With respect to the citizenship of the class members, it is well settled that citizenship for purposes of diversity means domicile rather than

residence.  *See, e.g., Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973) (citing

*Gilbert v. David*, 235 U.S. 561, 569 (1915)).  "To acquire domicile within a

particular state, a person must be physically present in the state and must have

either the intention to make his home there indefinitely or the absence of an

intention to make his home elsewhere."  *Id*. (citing *Gilbert*, 235 U.S. at 569–70).

Residency alone is not sufficient to demonstrate intent to remain; only domicile is

determinative.  *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001).

        23.     It is widely recognized that military service members do not

establish a new domicile at the state in which they are stationed without significant

additional steps:

> It makes eminent good sense to say as a matter of law
> that one who is in a place solely by virtue of superior
> force exerted by another should not be held to have
> abandoned his former domicile.  . . . The most obvious
> example is the serviceman. It has long been the rule that
> presence at his military station, without more, cannot
> make the station his domicile because a serviceman is
> subject to the orders of his superior officer. A corollary
> of this rule is that <u>a serviceman who lives on the military
> base, even if his family is living on-base with him,
> cannot establish a domicile at the base</u>.

*Stifel*, 477 F.2d at 1121–22 (emphasis added) (citations omitted).  The presumption

is rebuttable only by a showing of "clear and unequivocal evidence" of intent to

make a home in the place of military service.  *See, e.g., Rosado-Marrero by

Rosado-Cancel v. Hospital San Pablo*, 927 F. Supp. 576, 577 (D.P.R. 1996);

10

*Volmer v. Volmer*, 371 P.2d 70, 72 (Or. 1962) ("[T]he ordinary conduct of a person residing in this state incident to a military assignment here does not constitute sufficient evidence of the necessary domiciliary intent. To be relevant, conduct must be probative of intent, and not merely an incident of living in a given place.") (emphasis added).

24.    Although the FAC fails to assert the citizenship of the proposed class members, minimal diversity is demonstrated by the fact that the vast majority of the lessees are citizens of states other than Texas or Delaware (and Hawai'i, for that matter).  Rash Decl. ¶ 20.  Most (if not all) states are represented, with the largest state of domicile appearing to be California.  *See id.*  Therefore, the minimal diversity requirement is satisfied because there are members of the plaintiff class who are citizens of states other than Texas or Delaware.

**E.    The Proposed Class Consists of More Than 100 Members**

25.    28 U.S.C. § 1332(d)(5)(B) requires that the number of members of all proposed plaintiff classes in the aggregate be more than one hundred.  Here, Plaintiff has alleged that "Defendants entered into thousands of leases with tenants . . . ."  FAC ¶ 12.

26.    Defendants' neighborhoods in the Pearl Harbor area consist of approximately 4,273 housing units.  Rash Decl. ¶ 16.

27.     The proposed number of plaintiffs in the case therefore exceeds one hundred.

**F.     Removal Is Mandatory Because Less Than One-Third of the Proposed Class Members Are Citizens of the State of Hawaiʻi**

28.     Where the requirements of CAFA are met, and where less than one-third of the putative class members are citizens of the state where the action was filed, removal is mandatory.  Therefore, the Court has jurisdiction over the present case, since less than one-third of the proposed class members are citizens of the State of Hawaiʻi.

29.     Less than one-third of the class has taken the steps necessary to make Hawaiʻi their domicile.  This is not surprising as the vast majority of servicemembers stationed in Hawaiʻi leave the state after their tour concludes.

30.     This lack of intent to make Hawaiʻi their domicile is demonstrated by a number of factors, including but not limited to the following.

31.     First, according to the Personnel Support Activity Detachment for Pearl Harbor, only 2% of the sailors they service pay Hawaiʻi state income tax, and the rest pay taxes in other states.  Rash Decl. ¶ 17.  While the Personnel Support Activity Detachment services some sailors outside of Hawaiʻi, the vast majority are currently stationed in Hawaiʻi.  *Id.*  This alone should be determinative.

32.     Second, Defendants' former lessees have not evidenced an intent to stay in Hawaiʻi upon conclusion of their orders.  During the last three years, 2,051 lessees have moved out of Defendants' Navy communities.  When residents move out, Defendants request a forwarding address.  Of the individuals who have moved out during this time period, 562 provided forwarding addresses, and only 193 of those addresses were in Hawaiʻi.  Moreover, of the 193 lessees with Hawaiʻi addresses, 33 lessees simply moved to another Ohana-owned military housing community.  Rash Decl. ¶ 11.  Defendants believe that many other individuals who provided "Hawaiʻi" forwarding addresses were also moving into non-permanent housing, and intended to return to the mainland or elsewhere at the conclusion of their current stationing.

33.     Third, the lessees' phone numbers provide another data point. There are 5,657 lessees who leased housing in Defendants' Navy communities over the past three years.  Of those individuals, only 741 lessees (13.1%) provided a mobile phone number with a Hawaiʻi area code.  Rash Decl. ¶ 10.  Given that it is much easier to obtain a new mobile phone number than establish a domicile, the actual number of Hawaiʻi citizens are significantly fewer than these percentages.

34.     The evidence shows that more than two-thirds of the residents stationed in Hawaiʻi do not consider Hawaiʻi their permanent home and cannot be considered citizens of the state.  Therefore, the Court has mandatory jurisdiction

because the class action meets the minimal diversity requirement and less than one-third of the proposed class members are citizens of the State of Hawaiʻi.

**G.      Even if Removal Was Not Mandatory, the "Interests of Justice" Do Not Require Remand in This Case**

35.      Even if the Court somehow finds that more than one-third of the putative class members are Hawaiʻi citizens, this is not a case where the "interests of justice" require remand.

36.      First, to the extent that the one-third threshold could ever be exceeded, the data on taxes, forwarding addresses, and phone numbers suggests it would be exceedingly minimal.  In such an event, the Court should consider how often military members and their dependents are stationed in different states or countries for only a few years before moving to a new location.  Military members and their families are a highly mobile population, and the case law demonstrates that they cannot be presumed to adopt a new citizenship each time they receive orders to relocate.

37.      Second, the purpose of CAFA is to "expand[] federal jurisdiction over class actions and facilitate[] their removal."  *In re DirecTV Early Cancellation Litig*., 738 F. Supp. 2d 1062, 1072 (C.D. Cal. 2010) (emphasis added); *see also West Virginia ex rel. McGraw v. Comcast Corp*., 705 F. Supp. 2d 441, 449 (E.D. Pa. 2010) ("With … significant changes in place, federal courts

have jurisdiction over more class action suits than they did prior to CAFA's enactment, which was Congress's intent.").

38.     Third, the nature of this dispute is uniquely federal. The residences in questions are located on land owned by the federal government; Ohana is a public-private partnership between a private entity and the federal government; the housing at issue is a product of a unique federal statute known as the Military Housing Privatization Initiative; and the purported class members are federal service members or their family members.

39.     Fourth, the water at issue is supplied by the Navy from a utility it owns and operates.  *See, e.g.*, FAC ¶ 11.  To the extent that there is any liability, it is not with Defendants.

40.     Fifth, Plaintiff alleges that any fuel contamination was caused by the Navy, not Defendants.  *See id.* ¶¶ 14–17, 19.

41.     Given the numerous federal issues in this case, the federal court is the appropriate forum for his case.

42.     Lastly, two prior class actions involving the same or similar factual allegations and claims were filed against Defendants in the past three years: *Casey v. Ohana Military Communities, LLC*, Civ. No. 22-00037 LEK-WRP (D. Haw.) and *Camp v. Ohana Military Communities, LLC*, Civ. No. 1:24-CV-00003

LEK-KJM (D. Haw.).  28 U.S.C. § 1332(d)(3)(F).  The *Casey* matter was dismissed; however, the *Camp* matter is currently pending.

43.     Therefore, these factors weigh in favor of the exercise of federal jurisdiction.

## IV.     NOTICE TO ADVERSE PARTIES AND STATE COURT

44.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice shall be promptly served on Plaintiff's counsel of record and will be filed with the Clerk of the Court of the First Circuit, State of Hawaiʻi.

## V.     CONCLUSION

45.     By removing this action to this Court, Defendants do not waive any defenses, objections or motions available under state or federal law. Defendants expressly reserve the right to move for dismissal of Plaintiff's claims pursuant to Rule 12 of the Federal Rules of Civil Procedure and/or any other rule.

WHEREFORE, Defendants pray that the above-titled action be removed from the Circuit Court of the First Circuit, State of Hawaiʻi, to the United States District Court for the District of Hawaiʻi.

DATED:  Honolulu, Hawai'i, April 22, 2024.

/s/Randall C. Whattoff

JOACHIM P. COX
RANDALL C. WHATTOFF
KAMALA S. HAAKE

Attorneys for Defendants
OHANA MILITARY COMMUNITIES, LLC and
HUNT MH PROPERTY MANAGEMENT, LLC